UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

KRISTY A. CASALE,

        Plaintiff,

      -v-                          06-CV-0463-E(Sr)
                                         **ORDER**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

───────────────────────────────

## INTRODUCTION

Plaintiff Kristy A. Casale ("Plaintiff" and/or "Casale"), brings this action pursuant to the Social Security Act, (codified in relevant parts at 42 U.S.C. § 401 et. seq. and 42 U.S.C. § 1381 et. seq.) claiming that the Commissioner of Social Security improperly denied her application for disability insurance. Specifically, Casale alleges that the decision of an Administrative Law Judge ("ALJ") was erroneous and not supported by either the substantial evidence on the record or the applicable law. Casale requests that the Court finds her entitled to disability benefits under the provisions of the Social Security Act, or, in the alternative, to remand the action to the defendant for a further hearing.

The Commissioner moves for judgment on the pleadings on grounds that the ALJ's decision was correct, was supported by

───────────────────────────────

1. Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

substantial evidence, and was made in accordance with applicable law.  Plaintiff opposes the Commissioner's motion and cross-moves for judgment on the pleadings in her favor.  For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's cross-motion is denied.

BACKGROUND

On February 27, 2004, Plaintiff Kristy A. Casale applied for Social Security disability benefits, claiming that she became disabled due to a motor vehicle accident on September 4, 2003 (Tr. 61-63).  Her application was denied on June 8, 2004 (Tr. 32-36).  She timely filed a request for an administrative hearing. That hearing was held before ALJ Thomas Mancuso, and in a decision dated August 30, 2005, the ALJ determined that the Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 15-29).  Plaintiff then filed for review of the ALJ's decision by the Social Security Appeals Council (Tr. 12-14). That request was denied by the Council on June 6, 2006 (Tr. 6-8), and Plaintiff subsequently filed this action.

The Plaintiff was, at the time of her car accident, 29 years old.  She had completed approximately two years of college courses and had been granted a certificate to dispense medication (Tr. 82-83).  Beginning in 1996 and continuing until 2003, Plaintiff was gainfully employed in a series of jobs with increasing responsibility and salary, primarily in the business of caring for

2

developmentally disabled persons (Tr. 88).   Her most recent substantial gainful employment was as a site manager for a residential facility during the period of May 2001 until her car accident in 2003.   Id.   While this position occasionally required lifting of 50 pounds, it was determined by the vocational expert to be sedentary in nature (Tr. 291).Upon her accident in September 2003, Plaintiff was diagnosed with cervical spine pain (Tr. 149). On October 14, 2003, Dr. Bagnell of RehabNY examined Plaintiff and diagnosed disorders of the back and spine including whiplash (Tr. 139).   Dr. Bagnall made a referral to Phyllis Burgio, a chiropractor, and scheduled an MRI to investigate any possible further problems stemming from the car accident (Tr. 140).

Upon follow-up on November 4, 2003, Dr. Bagnell noted that the Plaintiff was markedly improved and was no longer taking medication (Tr. 135).  The MRI results revealed small disc herniations at C5-6 and C6-7 (Tr. 137).   The Plaintiff was advised to continue chiropractic treatment (Tr. 135).  An additional MRI on January 6, 2004 revealed a small disc herniation (Tr. 137). Plaintiff next sought treatment for her injuries with Dr. William N. Capicotto, an orthopedic surgeon, in December 2003 (Tr. 168-69).  Dr. Capicotto reported in communications to Progressive Insurance company that the Plaintiff was "totally disabled" until her next appointment in his office (Tr. 169).  The Plaintiff initially reported pain in her neck varying from "five to ten out of ten" (Tr. 165).

Dr. Capicotto continued to treat the Plaintiff, in conjunction with chiropractic care and massage therapy, throughout 2004.

On March 31, 2004, Dr. Fenwei Meng performed a consultative medical examination on the Plaintiff (Tr. 181-84).  He reviewed the medical diagnosis and records of the Plaintiff in addition to conducting an evaluation of her work-related physical capabilities. Dr. Meng found some mild limitations related to her neck and back injuries but made notes that the Plaintiff is capable of carrying out her daily activities without assistance and gave a "fair" overall prognosis.  Id. Dr. Capicotto performed disc surgery on Plaintiff on February 4, 2005 (Tr. 247).  In March, he noted that the Plaintiff was making a "good recovery".  Id.  After surgery, Dr. Capicotto noted some exertional limits the Plaintiff would need to observe, including no heavy lifting (Tr. 248).

After the ALJ's decision, the Plaintiff submitted two new pieces of evidence to the Appeals Council.  The first is a brief report from Buffalo Spine & Sports Medicine, P.C., which lists some exertional limitations of the Plaintiff but also states that the Plaintiff can "return to work" as of January 18, 2006, the date of the examination (Tr. 255).  The second item is a handwritten note of May 4, 2006, from Dr. Capicotto, saying that the Plaintiff "remains temp[orarily] totally disabled, 8 [weeks]" (Tr. 258).

Since 1997, Plaintiff has been seeing a psychotherapist, Dr. Louis La Barber (Tr. 152-158).  She was diagnosed with

borderline personality disorder and while several symptoms were listed, Dr. La Barber opines that the disorder presents no limitations regarding her ability to work (Tr. 157). Dr. Renee Baskin-Creel, a psychologist, performed a consultative psychiatric examination of Plaintiff on March 31, 2004. While Dr. Baskin-Creel made note of several symptoms and diagnosed anxiety, depressed mood, and pain disorder, he found no significant psychiatric disorder that would preclude employment. Following this appointment, a Mental Residual Functional Capacity Assessment was conducted which found mild restrictions in daily activity but agreed that the Plaintiff could work (Tr. 192-208).

DISCUSSION

I.   <u>Jurisdiction and Scope of Review</u>

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence.

See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that the reviewing court does not try a benefits case de novo). The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II. The ALJ's findings regarding the Plaintiff's credibility in subjective statements were supported by substantial evidence and were proper as a matter of law.

The Plaintiff claims that the ALJ failed to give the Plaintiff's testimony appropriate credibility by not considering her work history. When asked a hypothetical espousing the

Plaintiff's objective limitations set forth by her medical records, the vocational expert opined that the Plaintiff could continue in her past relevant work (Tr. 294). However, when factoring in the Plaintiff's subjective complaint of further limitation, including that the Plaintiff had to lay down for two to three hours per day, the vocational expert determined that the Plaintiff could neither perform her past relevant work nor could perform other jobs in the national economy, an opinion that would, for all intents and purposes, direct a finding of "disabled" in the Plaintiff's case (Tr. 294-95). A determination of disability therefore rests on the ALJ's assessment as to the credibility of the Plaintiff's subjective claims.

A.  Analysis of Subjective Testimony of a Claimant

In deciding whether to accept the subjective testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir.1996).

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of her symptoms.  The ALJ may choose to discredit or not accept certain testimony from the Plaintiff, so long as he "makes specific

findings stating clear and convincing reasons for doing so." <u>Id.</u>
at 1284 (citation omitted).   To wit, "the ALJ must state
specifically which symptom testimony is not credible and what facts
in the record lead to that conclusion." <u>Id.</u>

   B.  Relevance of the Claimant's Prior Work History

   The Plaintiff asserts that the ALJ was incorrect in lowering
the credibility of her subjective testimony without taking into
account her past work history.   In evaluating a claimant's
credibility, an ALJ must consider all of the evidence presented,
"including information about [the claimant's] prior work record."
20 C.F.R. § 416.929(c)(3).   The Second Circuit has instructed that
credibility determinations should take into account prior work
history.  <u>Schaal v. Apfel</u>, 134 F.3d 496, 502 (2d Cir.1998) (citing
Social Security Ruling 96-7p, 61 Fed.Reg. 34, 483, at 34, 486
(1996)). See <u>Rivera v. Schweiker</u>, 717 F.2d 719, 725 (2d Cir.1983)
("A claimant with a good work record is entitled to substantial
credibility when claiming an inability to work because of a
disability."). However, the analysis cannot begin and end on that
point.   The Second Circuit has specifically addressed the
Plaintiff's argument, holding that "it bears emphasizing that work
history is just one of many factors that the ALJ is instructed to
consider in weighing the credibility of claimant testimony."
<u>Schaal</u> at 502.

An assessment of Plaintiff's credibility must rest not only on her work history but upon all relevant information in the record. Plaintiff's argument that a good work history directs an automatic finding of substantial credibility is not reasonable.  To properly make a determination as to credibility of a claimant, the ALJ must consider the record and testimony in their entirety.

C. The ALJ's Analysis of the Plaintiff's Credibility

In the instant case, the ALJ found that the Plaintiff had produced objective medical evidence of disorders, and that those disorders could cause some degree of the claimed symptoms.

The Plaintiff's credibility, however, was based upon an analysis of Plaintiff's claims and the objective evidence in the record.  The ALJ engaged in a point-by-point examination of each of the Plaintiff's complaints and compared them to the objective medical evidence.  The ALJ notes several places in the record where Plaintiff's subjective claims as to the severity of her limitations are exaggerated beyond what the objective medical evidence supports as realistic (Tr. 26).  He examined the reports of the Plaintiff's therapist which contradicted her statements to other medical professionals.  Id.  He also gave authority to findings of a treating physician, Dr. Bagnall, who opined in November 2003 that the Plaintiff did not even have sufficient pain to warrant medication.  Id.  The ALJ further takes into account the reports of the consultative examinations of February and March 2004.  Id. The

ALJ found that the subjective statements of the Plaintiff were inconsistent in several places, and those inconsistencies "detract from her credibility" (Tr. 26).

When the ALJ has supported their credibility determination with substantial evidence, as has been done in this case, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Secretary, Dept. of Health and Human Services of U.S., 728 F.2d 588, 591 (2d Cir. 1984). The ALJ makes an especially detailed assessment of the facts he used to arrive at this determination. The ALJ's determination is supported by substantial evidence in the record and is not subject to reversal by this court.

III. The ALJ adequately developed the record, his findings were proper as a matter of law and were supported by substantial evidence.

Plaintiff argues that the ALJ failed to develop the medical record and should have sought clarification from treating physicians regarding alleged inconsistencies in the Plaintiff's medical history. Plaintiff's Memorandum at 4-7. The Second Circuit has held that, "The ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). I find that the ALJ satisfied his obligation to develop the record in this case, and further development of the record would not have led to a finding of "disabled" in the Plaintiff's favor.

A.  The ALJ was not required to give controlling weight to a medical source's opinion that the Plaintiff was "disabled", and was not required to seek clarification as to those statements.

In order to be granted controlling weight, opinions from treating sources must "reflect judgments about the nature and severity of [claimant's] impairment(s)." 20 C.F.R. §§ 404.1527(a)(2). Opinions from a medical source that a person is disabled "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(e). More specifically, "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F. R. § 404.1527(e)(1). Furthermore, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p. A court in the Western District has previously held that some determinations, "including the ultimate finding of disability, are specifically reserved to the Commissioner." Montalvo v. Barnhart, 457 F.Supp.2d 150 (W.D.N.Y. 2006); See also Snell v. Apfel, 177 F.3d 128 (2d. Cir. 1999).

The law firmly establishes that the repeated statements by Dr. Capicotto that Plaintiff is "totally disabled" are not entitled to controlling weight. The question is presented whether or not the ALJ should have sought clarification regarding the foundation

for those statements.  The Social Security Administration has set forth a two-prong test for determining whether an ALJ must attempt to recontact a medical source for clarification of an opinion.  The ALJ must make every reasonable effort to recontact the source "[1] if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and [2] the adjudicator cannot ascertain the basis of the opinion from the case record." Id.

The ALJ addresses the first part of the test in his decision (Tr. 23).  He states that while Dr. Capicotto describes the Plaintiff as "totally disabled," the surrounding evidence and the total medical record does not support a finding of disability as a matter of law (Tr. 21-29).  However, the Plaintiff concedes the second part of the test, saying that there are "copious amounts" of medical findings that show a basis for Dr. Capicotto's statement that she is "disabled" and that it is "hard to imagine" the ALJ not being able to ascertain the basis for the opinions.  Plaintiff's memorandum at 5.  Indeed, the ALJ discusses specific medical findings by treating physicians, consultative examiners, and other medical and non-medical sources throughout his decision.

The ALJ addressed the statements that the Plaintiff was "totally disabled" made by Dr. Capicotto and ascertained the basis for those statements (Tr. 21-24).  The ALJ found those statements to be unsupported, and then disagreed with those statements based

upon his own findings.  Id.  See 20 C.F.R. §404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability").  The ALJ was not required, as a matter of law, to seek clarification regarding statements from Dr. Capicotto of Plaintiff's "total disability".

   B.  Even if Dr. Capicotto's statements that the Plaintiff was totally disabled were given controlling weight, the Plaintiff would still fail to meet the statutory definition of disability.

   In order to be entitled to benefits, the Plaintiff must meet the definition of "disability" as found in 42 U.S.C. §423(d)(1)(A), specifically that the condition "has lasted or can be expected to last for a continuous period of not less than 12 months."

   While Dr. Capicotto has opined several times in the record that the Plaintiff is "disabled", each of those diagnosis is limited to a specific amount of time (Tr. 169, 245, 248, 250, 258). Specifically, the limits are, "until seen in this office in the next few weeks" (Tr. 169), "12 weeks" (Tr. 250), and "8 wks [weeks]" (Tr. 258).  The mention on February 1, 2005 gives no specific time (Tr. 245), and the statement on March 9, 2005 says "5 months" (Tr. 248), but they are followed by the later diagnosis of "12 weeks" on June 29, 2005 (Tr. 250) and as such must be construed to end at the point that diagnosis is made (granting 21 weeks from the statement made on February 1, 2005 until the statement on June 29 2005).  Even granting the maximum amount of time for these periods of disability, Dr. Capicotto has opined that

the Plaintiff is "disabled" for a continuous period of up to 41 weeks, or less than 10 months, well short of the 12-month minimum required to meet the definition of "disabled" found in 42 U.S.C. §423(d)(1)(A).   Therefore, even if Dr. Capicotto's statements were given controlling weight by the ALJ, a finding of "not disabled" would still result.

<u>CONCLUSION</u>

The ALJ's findings are supported by substantial evidence in the record and are proper as a matter of law.   Therefore, the ALJ decision is affirmed. Accordingly, the Commissioner's motion for judgment on the pleadings is granted.   The Plaintiff's motion for judgment on the pleadings is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

                          s/Michael A. Telesca
                          MICHAEL A. TELESCA
                          United States District Judge

Dated:      January 18, 2008
            Rochester, New York

14